### CUTTER *et al. v.* HUME *et al.*

*(Supreme Court, General Term, First Department.* December 31, 1891.)

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—FRAUD—INDEPENDENT TRANSACTIONS.

Real property owned by members of a firm was mortgaged by them without consideration, and the mortgage assigned to their wives, and some years later was conveyed to their wives through the son of one of them; but they continued to collect the rents, and subsequently conveyed other real estate purchased by them to their wives, in consideration of the indebtedness for the rents. This conveyance was not recorded, as the grantors intended to sell the property, and use the proceeds in discharging their obligations; and the deed was afterwards destroyed, and a new deed to the wives executed in place thereof, which was not recorded until a short time prior to the execution by the grantors of an assignment for the benefit of creditors. *Held,* that these transactions, having taken place prior to the making of the assignment, and being independent thereof, though they might have been frauds upon the assignment, were not sufficient to establish fraud in the assignment.

2. SAME—CANCELLATION OF INDEBTEDNESS TO ASSIGNOR.

The act of a surviving partner, a short time before an assignment by him of the firm property for benefit of creditors, in canceling a debt charged against his son on the books of the firm, is not ground for setting aside the assignment as fraudulent, where such cancellation had been previously agreed upon by both partners, in consideration of services by the son to the firm during many years, and was a reasonable compensation therefor, and made in pursuance of a promise to the son, although he had also been paid a regular salary.

3. SAME—ADDITIONAL SECURITY TO CREDITOR NOT SHOWN BY SCHEDULE—WANT OF DISCLOSURE.

The fact that a creditor, shown by an assignment, to have security, is otherwise secured, which additional security is not disclosed by the assignor's schedule, is not sufficient evidence of fraud to justify setting aside the assignment.

4. SAME—PREFERENCES IN EXCESS OF STATUTORY LIMIT.

The fact that an assignment for the benefit of creditors contains preferences in excess of the amount allowed by the statute invalidates the assignment only as to such excess.

Appeal from special term, New York county.

Action by John D. Cutter and another against Alexander W. Hume and others to vacate an assignment with preferences. From a judgment dismissing the complaint, plaintiffs appeal. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT and ANDREWS, JJ.

*Alex. Thain,* for appellants. *Putney & Bishop,* (*James L. Bishop,* of counsel,) for respondents Alexander W., Emma A., and Sarah Hume. *Thomas S. Strong,* (*Payson Merrill,* of counsel,) for respondent Spear. *Jacob W. Feeter,* respondent, *in pro. per.*

VAN BRUNT, P. J. This action was brought by the plaintiff for two inconsistent kinds of relief, one of which was demanded because of fraud in the assignment, and the other because of fraud upon the assignment. It is clear that these two kinds of relief could not possibly be granted in the same action. Certain defects in allegation being apparent at the commencement of the trial, it appears that the parties stipulated in open court that the com-

plaint should be considered sufficient in its allegations as containing a cause of action to set aside the assignment as fraudulent and void against creditors. And it is this cause of action which the learned court below tried, refusing to pass upon any of the questions which might be involved in the subject of fraud upon the assignment; it may be, basing his decision upon an erroneous ground, but in any event reaching a correct conclusion. It would be anomalous, indeed, were a party permitted in the same action to enforce rights conferred by an assignment, and also claim the right to vacate it upon the ground of fraud. The defendant Alexander W. Hume, as the surviving member of the firm of A. W. & T. Hume, on the 20th of May, 1889, made a general assignment with preferences. This assignment it is sought to set aside because of certain alleged frauds of the members of said firm in respect to certain property owned by them, and certain credits due to them. Considerable proof was introduced in respect to the property No. 229 Fifth avenue, and No. 499 Fifth avenue, which were at one time owned by the members of said firm. The premises No. 229 Fifth avenue were in April, 1878, mortgaged without consideration, and said mortgage assigned to the wives of the members of said firm, and in 1883 the members of said firm conveyed said premises to the son of one of the members, who in turn conveyed to the said wives. These conveyances were duly recorded, but subsequent to that time the firm continued to collect the rents of these premises, and pay the expenses thereof, and use the proceeds in their business, as they had theretofore done. In 1884 No. 499 Fifth avenue was purchased, and in 1888 a deed was executed to the wives of the respective members of the firm; the consideration being the indebtedness of the firm to the wives of the members thereof for the rents collected from No. 229 Fifth avenue. This deed was never put upon record, by agreement between the parties; it being the intention of the members of the firm to dispose of the property, and use the proceeds to discharge their obligations. In February, 1889, in consequence of making some change in the mortgages of No. 499 Fifth avenue, the deed made in 1888 was destroyed, and a new deed executed, which was not recorded until prior to the time of the making of the assignment above mentioned. It is claimed upon the part of the appellants that it was evidently the intention of the parties to keep the deed off the record in order to obtain credit on account of their ownership of the property, and, when their creditors should become pressing, to put it on record, and thus give their wives a preference. It is to be observed that all these transactions were a considerable time prior to the making of the assignment. They do not seem to have had any connection whatever with the assignment, but to have been independent transactions; and, whatever may be their legal effect, they, being independent, can have no bearing upon the question of fraud in the assignment itself. Even though they were frauds upon the assignment, they do not by any means establish fraud in the assignment.

Our attention is also called to the transaction in reference to the indebtedness alleged to be due from Thomas J. Hume, the son of the defendant Alexander W. Hume, a short time prior to the making of the assignment. It appears that he was charged with an indebtedness of $12,000 upon the books of the concern, and that he had been in their employ for many years, being credited with a salary of $20 to $25 per week upon the books. According to the testimony of Alexander W. Hume, he and his brother, who had died a short time prior to the making of the assignment, had talked over the matter of this indebtedness of the son to the firm, and had concluded to cancel the debt as a just compensation in addition to the salary. It is urged that no attempt was made to make this cancellation during the life-time of Thomas Hume, who died on the 20th of April; but that two days afterwards this charge was canceled by charging the same against the interest of A. W. Hume in the copartnership, and by crediting Thomas Hume with that

amount. The defense offered evidence to prove that the reasonable compensation of a person employed to perform the duties of Thomas J. Hume would be $64 a week; and such an amount, if it had been paid to him, would have amounted to the total sum with which he was charged upon the books of the firm. It is alleged, in answer to this testimony, that the books show that his agreed compensation was $20 to $25 a week. But the difficulty, it seems to us, with the position of the appellant, is that the transaction in reference to this $12,000 is assumed to be a fraud without any proof of that fact. If it was a reasonable compensation for the services which this young man had rendered to the firm, then it was no fraud upon the part of the surviving member of the firm to give it to him; and if it is claimed that it was an unreasonable compensation, then the burden of proof was upon the appellant to establish that fact, which he has not done. It further appears that, although Thomas J. Hume was credited with $20 to $25 per week on the books of the concern, it was not considered by the members of the firm as the limit of the salary which he was to receive, because it appears that he asked for an advance, and, instead of deciding upon the amount of the advance, he was told that he might draw certain moneys which he asked for from time to time; and that A. W. and his brother had intended to have adjusted it before his death.

We then come to the question of alleged fraud in respect to the mortgage to Mr. Feeter for $7,500. It is claimed that the schedule contained Mr. Feeter's name as an individual creditor of A. W. Hume to the extent of $7,500 for money loaned; and although the law required that the schedule should state the amount of the debt, the circumstances under which it arose, and the security given therefor, it failed to disclose that the $7,500 covered as well $5,000 of a debt which Feeter claimed as trustee, and for which he was already secured upon another piece of property; and that the $7,500 was not for money loaned, but for the $5,000 trust fund which he advanced, and for $2,500 counsel fees due to him by the firm. There is no pretense but what the total amount of this money was due to Mr. Feeter, either as trustee or individually, and that as to $5,000 he held two securities, and that in the schedule the fact of the additional security is omitted. But such omission did not prove any fraudulent intent. The mere omission of the fact of additional security does not necessarily indicate a fraud, and the evidence must tend to show that the omission was fraudulent, in order to justify a vacation of the assignment on that account. It may be true that, in order to get credit, false representations in regard to their financial condition and their ownership of property were made by the members of the firm; but none of these things had any relation to the assignment, or in any way imputed fraud in its execution. It is also true that the preferences contained in the assignment seem to be in excess of the amount allowed by statute. But that does not invalidate the assignment. It only invalidates so much of the preferences as are in excess of that permitted by law.

Upon an examination of the whole case, therefore, there seems to be no reason whatever for disturbing the judgment of the court below. Whether or not frauds were committed upon the assignment is not a question which it is necessary to discuss, because no such question was disposed of in the court below; neither could it be, in an action in which the assignment itself is attacked. The judgment should be affirmed, with costs. All concur.